Argued and submitted May 1, affirmed June 28, 2000

In the Matter of the Marriage of

Richard Dwayne STEVENSON,
*Appellant,*
*and*

Julie Kim STEVENSON,
*Respondent.*

(97C32730; CA A105360)

7 P3d 648

J. Michael Alexander argued the cause for appellant. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann.

Russell Lipetzky argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Judge, and Ceniceros, Senior Judge.

BREWER, J.

## BREWER, J.

■ Husband appeals from the trial court's disposition of his claim for a share of wife's enhanced earning capacity in this marital dissolution action. *Former* ORS 107.105(1)(f). We review *de novo*, ORS 19.415(3), and affirm.

The parties were married for approximately 22 years. At the time of their marriage, husband was 24, and wife was a 19-year-old student who had finished two years of college. After the marriage, she attended two additional years of college and, following graduation, became a dental hygienist. Wife worked full time as a dental hygienist until 1982, when the parties' first child was born, and she worked half time for several years thereafter. At the time of dissolution, wife was working 32 hours per week, earning an average monthly gross income of $3,774. Husband, an economic analyst for the State of Oregon, earned $3,309 per month in gross income.

Relying on *former* ORS 107.105(1)(f),[1] husband requested a share of wife's enhanced earning capacity resulting from the education she completed during the marriage. The court bifurcated the proceedings and initially resolved the other disputed issues in the case, including the division of property. The court awarded husband property valued at $17,372 more than the property awarded to wife. The court then wrote to counsel:

---

[1] ORS 107.105 (1997) provided, in part:

"(1) Whenever the court grants a decree of marital annulment, dissolution or separation, it has the power further to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The present value of, and income resulting from, the future enhanced earning capacity of either party shall be considered as property. The presumption of equal contribution to the acquisition of marital property, however, may not apply to enhanced earning capacity. A spouse asserting an interest in the income resulting from an enhancement of earning capacity of the other spouse must demonstrate that the spouse made a material contribution to the enhancement. Material contribution can be shown by, among other things, having contributed, financially or otherwise, to the education and training that resulted in the enhanced earning capacity. The contribution shall have been substantial and of prolonged duration."

"I find that this is a case calling for an award of *something* on account of wife's enhanced earning capacity * * *. However, in consideration of the benefits already received by husband during this 20 year marriage, both financial and intangible, I don't believe that further litigation on that issue would really be cost effective. (Wife's enhanced ability to work flexible hours during the marriage benefitted *both* parents and their children). It seems likely to me that the current disparity in the property award roughly approximates husband's equitable share of wife's enhanced earning capacity. Accordingly, while [husband] has reserved the right to present testimony on the issue, both parties may well be better off settling along the lines outlined above." (Emphasis original.)

Husband was not satisfied with the court's suggestion, and a second hearing was held solely to consider the question of wife's enhanced earning capacity. Husband called an expert witness, who calculated the present value of wife's enhanced earnings. The witness, Dr. Robert Male, made several assumptions, discussed below, and concluded that the present value of wife's lifetime enhanced earnings was between $410,308 and $664,863. Male calculated that range by subtracting from the present value of the lifetime earnings stream he expected for a dental hygienist with a four-year college degree, the present value of the expected lifetime earnings of a woman with two years of college education.[2] He then discounted the range by 50 percent, based on his opinion that one half of the total value was attributable to wife's innate abilities and that her education contributed the balance. The resulting discounted range of value of lifetime earnings was from $205,154 to $332,432. In the proposed property division spreadsheet that he attached to his trial memorandum, husband claimed a value of $200,000 for wife's enhanced earnings.

■. At the conclusion of the hearing, the trial court determined that husband was not entitled to additional credit for wife's enhanced earnings beyond the disparity created by the initial division of the parties' other assets:

---

[2] The witness actually compared the expected incomes of those groups using three different statistical methods, the details of which are not pertinent to the present discussion.

"Husband is getting something of an increased award on the property value, and I'm not suggesting those are precise figures, they are not, they are estimates, many of them, but you are getting a substantial amount of additional property in terms of overall value than the wife. And I think that's about right in terms of what is fair and proper, considering she is walking away from this marriage somewhat better as a result of the education than when she walked into it.

"So having said that, yes, I think there was a contribution and it was material and it was of substantial and prolonged duration, but percentagewise I don't think it was anything like the contribution wife was making in this case, and I think you enjoyed after 20 years most of the value of that."

At husband's request, the court made additional written findings in the judgment of dissolution:

"16.1   The present value of [wife's] enhanced future earning capacity as of December, 1998, is impossible to ascertain with specificity.

"16.2   In determining the appropriate value to place on [wife's] enhanced earning capacity, the factual issues considered by the court include [wife's] past, current and future income, [wife's] probable work life expectancy, and income information provided by [husband's] expert. The court found the testimony of Dr. Male to be credible, but rather speculative and of limited practical value in determining the ultimate issue.

"16.3   In arriving at a just and proper division of property, the factual issues considered by the court include but are not limited to the length of the marriage, each party's respective contribution to the other party's education and earning capacity, the extent to which a party's earning capacity is a result of a party's inherent characteristics, the extent to which the overall marital estate, both tangible and intangible, has benefitted from the parties' respective earning capacities, the parties' respective incomes, and the overall division of property. The court is of the opinion that whatever contributions [husband] made to the enhanced earnings of [wife] were not of such a nature that there was any sacrifice to [husband's] career or earning capacity."

Husband argues that the trial court's methodology is contrary to the guidance provided by the Oregon Supreme Court in *Denton and Denton*, 326 Or 236, 951 P2d 693 (1998). In *Denton*, the trial court judgment of dissolution awarded the wife judgment against the husband "as and for her contribution to the enhanced earning capacity acquired by [husband], to be paid in the form of annual installments in the amount of $15,000 per year for each calendar year that [husband] continues to work and [wife] survives." *Id.* at 245. The trial court described the purpose of the award as being "on account of husband's enhanced earnings, less wife's enhanced earning capacity, and after considering spousal support award, property division, including goodwill, etc." *Id.* The Supreme Court remanded the case to the trial court for reconsideration, because:

"It is impossible to discern from those statements the factual basis for the trial court's award. The court did not indicate the present value of either husband's or wife's enhanced earning capacity. Neither did it disclose what portion of husband's enhanced earning capacity it allocated to wife. Perhaps even more importantly, the award as crafted by the trial court does not specify the total amount that husband will be required to pay." *Id.*

According to husband, a similar deficit in revealed reasoning infects the trial court's findings in this case. Husband argues that:

"[I]t is unclear whether the [trial] court's finding that the present value of the enhanced earning capacity was impossible to ascertain referenced the professional opinion of [husband's expert], or the court's ultimate responsibility to determine an equitable value. If it is the former, it is contrary to the evidence. If the latter, then it is contrary to the responsibility of the court under *Denton*."

In order to evaluate husband's argument, we must consider in greater detail the nature of the evidence that he presented. Husband's expert, Male, made several assumptions that materially weakened the value of his opinion.

In the first place, without any apparent factual basis, Male *assumed* that one half of the value he ascribed to wife's enhanced earnings was attributable to her "innate

characteristics." We are not required to credit that arbitrary assessment. The correct allocation could, based on the record, just as easily have been any other percentage that the expert surmised. Perhaps recognizing the problem, husband now distances himself from that aspect of Male's analysis. Without explanation, husband notes that "[c]ounsel on appeal does not necessarily feel that this is an appropriate function of the expert, as opposed to merely calculating the differences in income and reducing them to present value." In any event, according to husband's evidence at trial, someone has to assess wife's contribution to her own earning capacity in order to avoid giving husband credit for value to which he did not contribute. If not the expert, then who? The trial court was certainly in no position to make such a determination without the benefit of an evidentiary basis to do so.

Next, there was evidence that the cost wife paid for the first two years of her higher education was significantly greater than that incurred by the parties to complete her education after the marriage. Male made no effort to differentiate those costs; the contributions to value made during each period were equally weighted in his calculations. In addition, Male compared the average earning capacity of women in general who have two years of college education with the income capacity of dental hygienists with a four-year degree. He made no effort to compare the incomes of dental hygienists with two years of college education[3] with dental hygienists who have obtained a four-year degree. Further, Male's calculations assumed that wife was and would be working full time throughout her career. That has not been the case and, in fact, the evidence was that most dental hygienists work less than full time.

Finally, Male assumed that wife would work until age 66½ in calculating her projected career earnings stream, although he readily acknowledged that the assumption was arbitrary. In fact, wife testified without contradiction that it is very rare for a dental hygienist to work until that age. The trial court ultimately engaged Male in an extended colloquy about the soundness of his approach to the determination of

---

[3] According to the evidence, it is not necessary to complete a four-year college degree program in order to become a dental hygienist.

enhanced earning capacity. It was evident that Male himself was troubled by the approach he had taken when he said, "I'm not here arguing for the analysis. * * * Nobody has asked me whether I think this is a good rule." In light of the foregoing, we return to the trial court's findings.

Contrary to husband's characterization, the trial court did not find that the value of wife's enhanced earnings was "impossible to ascertain." Rather, the court said that the value was "impossible to ascertain *with specificity.*" (Emphasis added.) Unlike the judgment in *Denton*, the judgment in this case gave husband the long half of the parties' assets—by a margin that the court specifically determined—that took into account the trial court's best estimate of the value of husband's contribution to wife's enhanced earnings. Thus, the most important problems with the judgment in *Denton* do not exist here: the trial court *did* estimate the value of husband's contribution and the court *did* specify the total amount, in effect, that wife was required to pay.

It is true that the trial court did not assign a gross value to wife's enhanced earning capacity, because it found that the evidence was of little use in making such a calculation. However, we disagree with husband's understanding that the trial court was required to "show its math" in valuing husband's interest in wife's enhanced earnings on the record in this case. The court faced a dilemma that regularly surfaces in dissolution cases: it was convinced that an asset did exist and should be allocated in a way that is just and equitable, but the court was not provided with adequate information to assign a specific value to the asset. There is ample authority for what was done here, namely, to make the best possible estimate of the value of husband's interest given the quality of the evidence.

In *Von Ofenheim and Von Ofenheim*, 40 Or App 865, 596 P2d 1007, *rev den* 287 Or 477 (1979), the trial court was required to allocate the husband's future interest in various family trusts. The court rejected the husband's proposal that, because the interests were difficult to value, it should defer the wife's sharing in them until the principal was actually received. *Id.* at 870-71. We held that:

"Given the testimony and the choices available to the trial judge, we agree with his conclusion in accepting the current value of the trusts. *There is no rule of law that requires the valuation of property to be mathematically certain." Id.* (emphasis added).

In *Langan and Langan,* 89 Or App 320, 748 P2d 1035, *rev den* 305 Or 433 (1988), the parties presented widely disparate proposed values for their assets to the trial court and offered sparse evidence to support those claimed values. We noted:

"The parties' valuations of the marital assets differ significantly. The evidence of property values in this case is very limited. The trial court made no express findings about values. We assume that it found the actual values of the properties at issue to be somewhere between the extremes of the values presented by the parties." *Id.* at 324 (footnote omitted).

Likewise, in *Pagano and Pagano,* 147 Or App 357, 935 P2d 1246 (1997), the trial court was required to divide a limited partnership interest that was a known asset of the marriage, but about which it had little reliable information. We said:

"Based on the limited information available and the respective positions of the parties, the trial court's findings in ascribing the holdings to about one half the value wife had given them and awarding that property to her seems a reasonable resolution of the matter." *Id.* at 366.

The problem with husband's position in this case is best illustrated by his proposed disposition on appeal. Husband "feels that an equitable value to be attached to this asset, and credited to wife, is $100,000, and that he should thus receive an appropriate equalizing judgment of approximately $40,000." Husband does not explain why the value he now assigns to wife's enhanced earnings bears no relation to the opinion of his expert or to his position in the trial court. More importantly, husband does not explain how any evidence before the trial court supports the value he now proposes. The absence of detailed analysis is symptomatic of the uncertainty posed by the evidence. In the face of questionable assumptions in the foundation of husband's evidence, the trial court nonetheless strove to value husband's interest in

wife's enhanced earning capacity. We do not understand *Denton* to require more than was done here; the court's responsibility for precision was limited by the nature and quality of the evidence.

Affirmed.