Argued and submitted February 4, judgment of dissolution modified in part;
otherwise affirmed May 29, 2002

# In the Matter of the Marriage of

## David Henry KUNZE,
*Appellant,*
*and*

## Nola Maxine KUNZE,
*Respondent.*

## DO99-1014; A112487

47 P3d 489

William J. Howe argued the cause for appellant. On the briefs were Valerie A. Fanning and Gevurtz, Menashe, Larson & Howe, P.C.

Donald O. Tarlow argued the cause for respondent. With him on the brief was Brown, Tarlow, Smith & Bridges, P.C.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

BREWER, J.

Judgment of dissolution modified to award husband judgment in amount of $140,116 against wife plus simple interest at rate of nine percent per annum, payable in full on or before January 1, 2004; interest shall accrue from date of this decision but shall not be payable until principal balance is due; otherwise affirmed.

## BREWER, J.

Husband appeals from a judgment dissolving the parties' 20-year marriage. He contends that the trial court erred in failing to include certain marital assets in the property division and in offsetting against his share of property an amount attributable to enhanced earning capacity from the college degree he obtained during the marriage. On *de novo* review, ORS 19.415, we modify the property division.

The parties were married in 1980 when wife was 29 and husband was 22. They separated in late 1999. At the time of the dissolution trial in August 2000, wife was 49 and husband was 42. Custody of their then 10-year-old daughter was awarded to wife. At the time of the marriage, wife was a college graduate and was employed as a speech pathologist; husband was working as a copier technician, earning approximately $1,000 per month. Before the marriage, husband had attended college for four years and had acquired some carpentry skills. Wife brought to the marriage a parcel of real property (the Germantown Road property) that contained two residences with an equity of $65,000. Wife also owned several small bank accounts, furnishings, and a car. Husband owned a car, subject to a loan, and some miscellaneous personal effects. He brought no real estate or any other asset of significant value to the marriage. From 1980 until 1983, the parties lived in one of the Germantown Road residences and rented the other. Although wife did not add husband's name to the title of the Germantown Road property during that period, the rent from the property was deposited in a joint bank account and property expenses were paid from that account.

In 1983, wife's aunt, Barbara Johnson, died. Johnson, a California resident, had been a successful businesswoman and real estate investor. She left a sizeable estate at her death. Wife and Johnson had been very close over the years, and wife was a significant beneficiary of the estate. In her will, Johnson devised her duplex residence and a parcel of commercial property (the National City property) to wife, as well as the duplex furnishings and an interest in some bank accounts. Wife also was named as a co-personal

representative of Johnson's estate. Because the estate largely was illiquid and its management was complex, the parties moved to California in 1984 so that wife could perform her administrative duties at close hand. In 1985, wife received the duplex and the National City property in a partial distribution from Johnson's estate.[1] Because those properties play a prominent role in husband's appeal, we now trace their subsequent history in some detail.

Wife sold the duplex in 1985 for $450,000. The down payment of $125,000 was fully expended to pay off an encumbrance against the property and to pay the real estate commission incurred in the sale. Wife received a promissory note and trust deed to document and secure the $325,000 balance of the sale price. Wife received monthly payments on the note from 1985 until 1992. The payment proceeds were regularly deposited into the parties' joint bank account. The balance of the note, approximately $315,000, was paid in full in 1992. Approximately $170,000 of the balloon payment was used in 1993 for the outright cash purchase of a fourplex residential property in Beaverton (the Chaps Court property). The parties jointly acquired title to the Chaps Court property as tenants by the entireties. The duplex balloon payment also was used to pay off the encumbrance on the Germantown Road property and was applied toward the improvement of a residence that the parties had acquired in 1991 (the Calkins Lane property).

At the time of its distribution to wife, the National City property was leased to a commercial tenant on a triple-net basis. The lease expired in December 1999. The net monthly lease payments increased from $1,300 in 1985 to $2,551 in 1999. Wife never deeded an interest in the property to husband. However, the lease payments were regularly deposited into the parties' joint account and were used for family purposes. After the lease expired, wife did not re-lease the property but, instead, attempted to sell it. In the meantime, wife made the tax and utility payments on the property from other financial resources. The property had not been

---

[1] Wife also received $13,000 in cash from the estate, which was used for family living expenses and to finance a racquetball court construction project that husband undertook. The project was not profitable.

sold at the time of trial in August 2000. The parties stipulated that the National City property was worth $219,000 when wife received it in 1985 and that its value had increased to $324,000 at the time of trial.

In 1985, the parties moved to North Dakota so that husband could further his education at wife's alma mater, North Dakota State University. The parties jointly acquired a residence in North Dakota, financing the purchase with funds from the Johnson estate.[2] While husband was a student, wife obtained employment as a speech pathologist and supported the family through her earnings, the lease income from the National City property, the note payments from the sale of the duplex, and a small amount of rental income from the Germantown Road property.

Husband obtained a bachelor's degree in construction management in 1990. The parties' daughter was born in August 1990. In November, the parties returned to live in Oregon. They sold their North Dakota residence and, in 1991, used the proceeds as a down payment toward the acquisition of a new residence, the Calkins Lane property near Newberg. Their plan was for wife to remain at home with the child and for husband to find work suited to his education and training in the construction field. Husband started a fence-building business with his father and brother in 1991. That venture continued—with little economic success—until it closed in 1993. Husband earned $11,865 in 1991, $5,215 in 1992, and $4,300 in 1993. Husband did not earn any further employment income from 1993 until the time of trial.

Husband was seriously injured in a fall in December 1993 and was unable to work for the next 18 months. During that time, wife cared for the parties' child, attended to husband, and managed the farm and investment properties. Following his recovery, husband worked on a property development project involving three lots in Newberg on which the parties built and sold homes. However, despite his own education and experience, husband hired a general contractor to

---

[2] The parties stipulated at trial that wife should receive—without a charge against her share of the dissolution property division—additional real property in North Dakota that was held in her name alone. There is no evidence in the record of the source or value of that property.

build the homes, and the parties ultimately lost money on the overall project. The parties had to obtain construction financing to complete the project, and it was necessary to provide a mortgage on the Germantown Road property as security for the loan. Because husband was a joint owner of the project, the lender insisted that the parties also must co-own the collateralized Germantown Road property. As a consequence, wife deeded a joint ownership interest in that property to husband in 1995, and the parties owned that property as tenants by the entireties at the time of trial.

Except for the period of his convalescence, husband provided considerable labor, planning, and management services for the benefit of the parties' investment properties. He painted, remodeled, and performed improvements and repairs on the Germantown Road, Chaps Court, and Calkins Lane properties. Wife also performed maintenance and other labor on those properties. In particular, the parties spent considerable sums improving the Calkins Lane property, converting it to a working farm for tax purposes. Although the enterprise never was profitable, the parties ran cattle on the property and each personally spent a substantial amount of time and effort working on the farm. However, some of the improvements that the parties had planned for the property remained unfinished at the time of trial. The parties stipulated that, at the time of trial, the Calkins Lane property was worth $379,000, subject to an unpaid mortgage balance of $180,000, and also less the cost of finishing the improvements. They disputed only the cost of completing the improvements. Wife provided expert testimony from a general contractor that the reasonable cost of the unfinished work was approximately $25,000. Husband testified that it was less. The trial court accepted the contractor's opinion and assigned a net value of $174,000 to the Calkins Lane property.

The parties sold one of the Germantown Road residences in 1997. The proceeds of the sale were deposited into a joint account (the PIMCO account) and were used in part for family living expenses.[3] Wife also returned to employment outside the home in 1997 and, at the time of trial, was

---

[3] The PIMCO account had a balance of $35,608 at the time of trial.

employed as a school speech pathologist, earning approximately $38,000 per year. At that time, wife was living on the Calkins Lane property with the parties' child and was making the monthly mortgage payment of $1,969. Husband was living in one of the fourplex units at Chaps Court, a second unit there was vacant, and the parties were equally dividing the monthly rental income from the remaining two units.

At trial, the parties stipulated that wife would have custody of the parties' child, and neither party sought spousal support. The evidence centered on the division of property and, in particular, on the appropriate division of the property—including its proceeds—that wife inherited from Johnson, the remaining Germantown Road residence that wife brought to the marriage, and wife's claim for enhanced earning capacity relating to husband's construction management degree. Wife took the position that she should receive—free of any claim by husband—her $65,000 premarital equity in the Germantown Road property, the $170,000 contribution that she made to the Chaps Court property from the proceeds of the duplex note, the National City property, and the PIMCO account. Both parties testified that they expected their joint assets to be available for their retirement, although wife was less definite in that regard.

Wife also presented testimony from an expert witness who concluded that husband had obtained enhanced earning capacity from his construction management degree that "conservatively" could be valued at $288,322. The witness testified that the upper end of the value range was $796,829. In reaching his conclusions, the witness did not calculate the parties' respective contributions to husband's enhanced earning capacity or the cost of obtaining the degree, nor did he give weight to career choices that husband had made and might make in the future that could affect his actual earnings.

For the most part, the trial court accepted wife's view of the property dispute. The court excluded portions or all of several marital assets from the division on the ground that wife had rebutted the presumption that husband had contributed equally to them. In that regard, the court

excluded the National City property, the $170,000 portion of the Chaps Court equity attributable to the down payment made from the proceeds of the duplex note balloon payment, and wife's $65,000 premarital equity in the Germantown Road property. The court included in the calculus the appreciation in the value of those properties that accrued during the marriage. Finally, although the court did not assign any particular value to husband's enhanced earning capacity, the court essentially used that purported asset to "balance" the property division.[4] The trial court made the following division:[5]

To wife:

| (1) National City property | no value assigned | |
|---|---|---|
| (2) Calkins Lane property | $174,000 | |
| (3) Chaps Court property | $ 51,225 | ($221,225 fair market value - $170,000 from duplex) |
| (4) 2 vehicles | $ 9,500 | |
| (5) Wife's IRA | $ 22,776 | |
| (6) Miscellaneous cash accounts | $ 3,656 | |
| (7) PIMCO account | $ 25,608 | |
| Total: | $286,765 | |

To husband:

| (1) Germantown Road property | $ 90,000 | (value of appreciation during marriage) |
|---|---|---|
| (2) Husband's IRA | $ 4,033 | |
| (3) 2 vehicles | $ 7,500 | |
| (4) PIMCO account proceeds | $ 10,000 | |

---

[4] Wife asserts that the trial court actually adopted the opinion of her witness, assigning a value of $288,322 to husband's enhanced earning capacity. It is true that the court referred to that figure as the "very lowest and most conservative calculation." However, the court did not adopt that value. After the court recited on the record its division of the other assets and before addressing the issue of enhanced earning capacity, the court calculated a "net due to [husband] of $22,616." If the trial court actually had assigned a $288,322 value to that capacity, in the court's view, husband would have received $265,706 in excess of his just and proper share of marital property. In any case, as discussed below, on *de novo* review, we do not adopt the opinion of wife's witness.

[5] For convenience, the division shown does not include certain personal property that the parties did not value or that otherwise was equally allocated between them.

(5) Husband's enhanced earning capacity unvalued

| | | |
|---|---|---|
| Subtotal: | $111,533 | |
| Property awarded to both parties | $398,298 ÷ 2 = $199,149 | |
| Husband's shortfall | $ 87,616 | |
| Award to balance | $ 65,000 | (wife's premarital equity in Germantown Road property) |
| | $ 22,616 | (assumed minimum value of husband's enhanced earnings) |

The court explained its rationale for the division:

"In essence, from my perspective, the vast majority of these properties and equities were acquired through [wife's] inheritance.

"Yes, [husband] did some caretaking work and some remodeling work, but frankly [his] job history is sketchy at best, and given the number of properties and the amount of work involved, I don't find that [husband's] contribution was extraordinary."

Husband assigns error to the trial court's exclusion of any of the parties' assets, except for wife's North Dakota property, from the property division. As husband sees it, all of the remaining property should have been equally divided, and the court should not have assigned any value to his putative enhanced earning capacity. In husband's view, the trial court's division was skewed in wife's direction as follows:

To wife:

| | | |
|---|---|---|
| (1) National City property | $324,000 | |
| (2) Calkins Lane property | $174,000 | |
| (3) Chaps Court property | $221,225 | |
| (4) 2 vehicles | $ 9,500 | |
| (5) Wife's IRA | $ 22,776 | |
| (6) Miscellaneous cash accounts | $ 3,656 | |
| (7) PIMCO account | $ 25,608 | |
| Total: | | $780,765 |

To husband:

| | | | |
|---|---|---|---|
| (1) | Germantown Road | $165,000 | |
| | property | $    4,033 | |
| (2) | Husband's IRA | $    7,500 | |
| (3) | 2 vehicles | $  10,000 | |
| (4) | PIMCO account proceeds | | |
| (5) | Husband's enhanced earning capacity | $       -0- | |
| Total: | | | $186,533 |

| | |
|---|---|
| Total property subject to division | $967,298 |
| Husband's shortfall | $297,116 |

($967,298 ÷ 2 = $483,649 - $186,533)

■ We begin our review of the trial court's division of property with the self-admonition that we will not modify it unless we conclude that a different division is significantly preferable. *Bidwell and Bidwell*, 170 Or App 239, 242, 12 P3d 76 (2000), *on recons* 172 Or App 292, 18 P3d 465, *rev den* 332 Or 305 (2001). We turn to the governing legal principles. ORS 107.105 provides, in part:

"(1)   Whenever the court grants a decree of marital * * * dissolution * * * it may further decree as follows:

"* * * * *

"(f)   For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

■■ The statute creates two classes of property: "marital property" and "marital assets." The former refers to *any* property of the parties. *Pierson and Pierson*, 294 Or 117, 121, 653 P2d 1258 (1982). The latter refers to real or personal property, or both, that either of the parties, or both of them, *acquired during the marriage. Id.* at 121-22. Thus, "marital assets" does not include property that either party brought

into the marriage or acquired after the dissolution of the marriage. *Id.* at 121. Property may be "marital property," subject to the dispositional authority of the court, without being a "marital asset." *Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989).

■ The court has authority to dispose of marital property in a manner that is "just and proper in all the circumstances." ORS 107.105(1)(f). To assist the court in determining what is just and proper, the statute announces several guidelines, one of which is pertinent in this case and concerns the smaller class of property, "marital assets." *See generally Massee and Massee*, 328 Or 195, 201-02, 970 P2d 1203 (1999). The statute creates a rebuttable presumption that both parties contributed equally to the acquisition of any marital assets. The Supreme Court has described the operation of the presumption in the following terms:

> "The basic fact required for the operation of the presumption of equal contribution in paragraph (1)(f) is that the parties acquired property during their marriage. If a party establishes that fact, then the court, in the absence of rebuttal evidence, is bound to accept as true that the parties contributed equally to the acquisition of the marital assets. * * *
>
> "If either or both of the parties seek to rebut the presumption of equal contribution, then the burden of proof identified in [*Stice,* 308 Or at 326], applies:
>
> " 'OEC 308, which is applicable to marital dissolution cases, provides:
>
> " ' "In civil actions and proceedings, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."
>
> " 'The spouse disputing the presumption of equal contribution has the burden of proving by a preponderance of the evidence that it is more probable than not that the other spouse did *not* contribute equally to the acquisition of the property. OEC 308; ORS 107.105(1)(f).' (Emphasis in original.)
>
> "In deciding whether either party has rebutted the presumption of equal contribution, the court may consider any

admissible evidence that is probative of the question whether the parties contributed unequally to the acquisition of marital assets." *Id.* at 203-04.

Although the court is required to evaluate the "magnitude" of the parties' contributions to the acquisition of the disputed marital asset, it is not necessary that those contributions be economic in nature or that they be expressed in terms of dollars and cents; the parties' contributions may be economic, domestic, or nondomestic in nature. *Id.* at 205.

■■  If the court decides that the presumption of equal contribution has been rebutted, then the court may distribute the marital assets in a manner that is just and proper in all the circumstances, without regard to any presumption. *Id.* at 205. Even if the court decides that the presumption has *not* been rebutted, the court is required to distribute the assets in a manner that is just and equitable, *Stice*, 308 Or at 326, although it is often stated that, in the absence of special circumstances, what is "just and proper" is an equal distribution of the marital assets. *Drews and Drews*, 153 Or App 126, 131, 956 P2d 246 (1998); *Colling and Colling*, 139 Or App 16, 23, 910 P2d 1165, *rev den* 324 Or 78 (1996).

■  With the foregoing principles in mind, we turn to the property at issue in this case. We begin with the National City property. Wife received that property in a partial distribution of the estate of her aunt in 1985. Because she received it during the marriage, it is a marital asset that is subject to the presumption of equal contribution. The evidence shows that wife acquired that property solely through the inheritance, without any contribution from husband. Moreover, the evidence shows that wife was the sole object of her aunt's donative intent. Wife rebutted the presumption of equal contribution as to that marital asset.

There is evidence that the National City property increased in value during the marriage. That increase in value constitutes an acquisition of property and thus is a marital asset that also is subject to the presumption of equal contribution. The evidence, however, shows that the property was virtually a passive investment throughout the marriage and that husband did not contribute in any way to the

increase in value. Wife rebutted the presumption of equal contribution as to that marital asset.

■ The Chaps Court property was acquired in 1993, during the marriage. It, too, is a marital asset; indeed the parties took joint title to the property as tenants by the entireties. It is true that the property was purchased with funds that wife acquired when she sold the duplex that she inherited from her aunt. As a rule, however, funds from the sale of property that belong to one spouse will remain an asset of that spouse only if they remain segregated; if they are deposited into a joint account or used to acquire a joint asset, courts will not trace the funds back to their original source. *See, e.g., Butler and Butler*, 160 Or App 314, 321, 981 P2d 389 (1999) (joint assets acquired during the marriage are marital assets subject to the presumption of equal contribution even when purchased with inheritance money belonging to one spouse); *Troffo and Troffo*, 151 Or App 741, 747, 951 P2d 197 (1997) (quoting *Day and Day*, 137 Or App 264, 269, 904 P2d 171 (1995), *rev den* 322 Or 598 (1996) (" 'Unsegregated funds will not be traced to their ultimate source * * * unless there is a compelling reason to do so.' "). Thus, the Chaps Court property is a marital asset subject to the presumption of equal contribution. Wife has proffered no evidence to rebut the presumption other than the fact that she used her money to purchase the jointly held asset. We conclude that she did not rebut the presumption with respect to that property.

■ The parties jointly acquired the Germantown Road property in 1995. Thus, it is a marital asset to which the presumption of equal contribution applies. It is true that, at least originally, wife owned that property in her own name. But, as with the Chaps Court property, so also here, once she transferred the Germantown Road property into joint ownership, the original source of the asset, although pertinent in some circumstances, is not dispositive. *Butler*, 160 Or App at 321; *Troffo*, 151 Or App at 747. As we have noted with respect to the Germantown Road property, husband provided considerable labor, planning, and management services. He remodeled, painted, and performed improvements and repairs on the property. Wife, too, performed maintenance and other services. But, on balance, we cannot say that she has established by a preponderance of the evidence that husband's

contributions were unequal to hers. We conclude that, with respect to the Germantown Road property, wife again failed to rebut the presumption of equal contribution.

In summary, we have concluded that wife rebutted the presumption of equal contribution as to the National City property, including the appreciation in value of that asset during the marriage. With respect to the Chaps Court property and the Germantown Road property, however, wife did not rebut the presumption.

The question remains what is a "just and reasonable" distribution of those marital assets. ORS 107.105(1)(f). Given that wife rebutted the presumption with respect to the National City property by demonstrating that, in effect, husband contributed nothing to the acquisition of it or to the increase in its value, we conclude that it is just and proper to award that asset to wife. As for the Chaps Court property and the Germantown Road property, because wife did not rebut the presumption, an equal distribution of those assets is appropriate in the absence of special circumstances. *Drews*, 153 Or App at 131. In this case, we find no special circumstances. To the contrary, throughout their long relationship, the parties treated those assets as joint assets, jointly maintaining them and depositing any income generated by them into joint accounts. We conclude that it is just and proper to distribute the value of those properties equally between the parties. Husband's additional share of the value of those properties is $117,500.[6]

We turn briefly to the issue of husband's enhanced earning capacity. The evidence on that subject is difficult to evaluate, in part because of factors that wife's witness failed to consider or weigh. For example, the witness made no effort to consider the role of husband's "innate characteristics" in measuring any enhanced earning capacity that may inhere in his college degree. *See Stevenson and Stevenson*, 168 Or App 673, 678-79, 7 P3d 648 (2000).

---

[6] That figure is derived by dividing in half the sum of the premarital equity in the Germantown Road property ($65,000) and the contribution wife made to the Chaps Court property acquisition from the duplex note proceeds ($170,000).

Furthermore, although husband obtained his degree in 1990, at the time of trial ten years later he had never been employed in his degree field. Nor was there any evidence that husband would make any economic use of his degree in the future. Wife's expert did not adjust the value of husband's earning capacity in light of that evidentiary record. Thus, wife's position assumes that a spouse who obtains a college degree during the marriage will be charged with its hypothetical value in a marital dissolution, even if that spouse has not, in fact, derived any economic benefit from it. Nothing in the statute authorizing the division of enhanced earning capacity requires such a conclusion. To the contrary, the text of the statute suggested that, to be divisible, enhanced earning capacity actually must produce income.[7] Although the determination of "capacity" necessarily involves future economic projection, it makes little sense to employ the concept of property division to penalize or coerce a spouse who has—for whatever reason—eschewed a particular career, even one for which he or she specifically trained.[8]

Wife had the burden of demonstrating that husband had a future enhanced earning capacity. We are not persuaded that wife established that such an asset existed or, if it did, that it had an ascertainable value. Accordingly, on

---

[7] ORS 107.105(1)(f) (1997) provided, in part:

"(1) Whenever the court grants a decree of marital * * * dissolution, it has the power to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The present value of, and income resulting from, the future enhanced earning capacity of either party may be considered as property. The presumption of equal contribution to the acquisition of marital property, however, shall not apply to enhanced earning capacity. A spouse asserting an interest *in the income resulting from an enhancement of earning capacity* of the other spouse must demonstrate that the spouse made a material contribution to the enhancement. Material contribution can be shown by, among other things, having contributed, financially or otherwise, to the education and training that resulted in the enhanced earning capacity. The contribution shall have been substantial and of prolonged duration." (Emphasis added.)

ORS 107.105(1)(f) was amended in 1999. The amendment deleted the portion of the statute that recognized the existence of enhanced earning capacity as a form of marital property.

[8] The same conclusion does not necessarily follow where support is at issue.

*de novo* review, we reject the trial court's determination that husband had enhanced earnings with a minimum value of $22,616.

In summary, the trial court did not err in excluding the National City property from the property division. However, wife did not rebut the presumption that husband equally contributed to the Germantown Road and Chaps Court properties, and no special circumstances justify an unequal division of those marital assets. It follows that the trial court erred in excluding from the property division $170,000, representing the down payment on the Chaps Court property, and $65,000, representing the premarital value of the Germantown Road property. The total of those amounts is $235,000, of which husband is entitled to receive one half, namely, the sum of $117,500. In addition, the trial court erred in determining that husband had an enhanced earning capacity and, accordingly, the court also erred in reducing husband's share of the property division by $22,616.

Judgment of dissolution modified to award husband judgment in amount of $140,116 against wife plus simple interest at rate of nine percent per annum, payable in full on or before January 1, 2004; interest shall accrue from date of this decision but shall not be payable until principal balance is due; otherwise affirmed.