Argued and submitted September 5, 1997, decision of Court of Appeals reversed in part and affirmed in part; judgment of circuit court reversed and case remanded to circuit court for further proceedings January 8, 1998

In the Matter of the Marriage of

Samuel Jonathan DENTON,
*Respondent on Review,*

*and*

Edna Fleischmann DENTON,
*Petitioner on Review.*

(CC 93C-35739; CA A86943; SC S43977)

951 P2d 693

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C., Salem, argued the cause and filed the briefs for petitioner on review.

Russell Lipetsky, Salem, argued the cause and filed the briefs for respondent on review.

GILLETTE, J.

## GILLETTE, J.

In this marital dissolution action, the issue presented is whether wife's contribution to husband's acquisition of a medical license was sufficiently "material," "substantial," and "prolonged," as those terms are used in ORS 107.105(1)(f), to entitle wife to receive an equitable portion of husband's enhanced earning capacity resulting from that license as part of the property distribution in the case. The trial court held that wife's contribution met those statutory criteria, and awarded wife $15,000 per year for as long as she survives and husband continues to work. On appeal by husband, the Court of Appeals reversed, holding that wife's contribution was not sufficient to justify an award for enhanced earning capacity. *Denton and Denton*, 145 Or App 381, 930 P2d 239 (1996). We allowed wife's petition for review to consider whether the Court of Appeals applied the appropriate legal standard in assessing the type of contribution to enhanced earning capacity that is necessary for such an award under the statute. We conclude that it did. However, because we disagree with that court's application of that standard to the facts of the present case, we reverse the decision of the Court of Appeals in part and affirm it in part. The judgment of the circuit court is reversed and the case is remanded to the circuit court for further proceedings.

The Court of Appeals reviewed the facts in this case *de novo*. Pursuant to ORS 19.125(4), this court also may review the facts *de novo*, or it may limit its review to questions of law. The facts relevant to the resolution of the issue before us are not in dispute, although their legal significance is. Accordingly, there is no reason to review *de novo*. The following facts are taken from the findings of the Court of Appeals and from undisputed additional facts in the record.

Husband and wife were married in October 1976. By the time of the marriage, husband had earned a bachelor's degree in zoology and a master's degree in wildlife ecology at Oregon State University (OSU) in Corvallis. During the early years of the marriage, husband tried and failed several times to gain admission to medical school. Husband began taking various graduate-level courses at OSU in an effort to make

himself a more attractive medical school candidate. He also worked at two or three temporary, part-time jobs in the medical field toward the same end.

When the parties married, wife was a licensed practical nurse with a high-school education who worked full time at a local hospital. During the period in which husband took the graduate courses, wife continued to work full time and also did all the cooking, cleaning, laundry, shopping, and home maintenance, and she paid all the bills.

In 1978, husband gained admission to the medical school at the Oregon Health Sciences University (OHSU) in Portland. Wife quit her job, and the parties moved to Portland. Soon thereafter, wife found a full-time position at a Portland clinic. From 1978 to 1982, while husband was in medical school, wife continued to work full time and to perform all the homemaking duties as well. The parties paid for husband's medical school tuition and related expenses primarily through student loans, grants, and scholarships.

When husband graduated from medical school, he took a one-year paid internship at St. Vincent's Hospital in Beaverton, followed by a staff position at Good Samaritan Hospital. For most of that time, wife continued to work full time, although husband's income eventually exceeded hers by a substantial margin. She also continued to perform all household tasks.

Husband then decided to undertake a three-year dermatology residency in Iowa. Wife cut down on her hours and eventually quit her job in May 1984 to prepare the family for the move. In Iowa, wife did not work outside the home. She took classes at a local community college, paid for completely out of husband's income, underwent numerous medical procedures in an unsuccessful attempt to conceive and bear a child, and continued to perform all household duties.

At the completion of husband's dermatology residency, the parties returned to Oregon, where husband became a shareholder in a dermatology practice in Salem. Wife began taking college courses at OSU, again financed by husband's income, earning a bachelor's degree in sociology in 1991.

The parties separated in 1990, and husband commenced this dissolution action in September 1993. By the time of the trial in 1994, husband was earning $12,300 per month in salary and bonuses at the dermatology clinic. Wife was working part time as a hospital clerk.

The trial court divided the parties' tangible assets roughly equally and more or less in accordance with the parties' wishes. In addition, it assigned a goodwill value to husband's dermatology practice and awarded wife half that amount. It further awarded wife $2,000 per month in permanent spousal support and separately awarded wife $15,000 per year for each year that husband continues to work and wife survives, for "husband's enhanced earnings, less wife's enhanced earning capacity, and after considering spousal support award, property division, including goodwill, etc."

Husband appealed the trial court's order, assigning error to the inclusion of awards for goodwill and enhanced earning capacity, and to the award of indefinite spousal support. A divided Court of Appeals eliminated the award for enhanced earning capacity, holding that, under the controlling statute, wife's contribution to husband's acquisition of his medical license was not "material," nor was it sufficiently "substantial" or "prolonged," to justify the award. *Denton*, 145 Or App at 403. The Court of Appeals also modified the support award, increasing the monthly payment due wife but limiting the duration of the award to 10 years, and allowed the amount allocated by the trial court for goodwill to stand. *Id.* at 408-09.

The only issue before this court concerns the propriety of the Court of Appeals' decision to eliminate the award for enhanced earning capacity. We begin our analysis with an examination of the statutory wording pertaining to property awards for enhanced earning capacity, ORS 107.105(1)(f):

"Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The present value of, and income resulting from, the future enhanced earning capacity of either party shall be considered as property.[1] The presumption of equal contribution to the acquisition of marital property, however, shall not apply to enhanced earning capacity. A spouse asserting an interest in the income resulting from an enhancement of earning capacity of the other spouse must demonstrate that the spouse made a material contribution to the enhancement. Material contribution can be shown by, among other things, having contributed, financially or otherwise, to the education and training that resulted in the enhanced earning capacity. The contribution shall have been substantial and of prolonged duration."

In interpreting that wording, we first consider the text of the statute to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Although the text of the statutory provision itself is the best evidence of the legislature's intent, we also consider, at this first level of analysis, the context of the statutory provision at issue, which includes other provisions of the same statute and other related statutes, *ibid.*, as well as the preexisting common law and the statutory framework within which the law was enacted, *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 322 Or 406, 415-17, 908 P2d 300 (1995), *modified on recons* 325 Or 46, 932 P2d 1141 (1997). If the legislature's intent is clear after this analysis, further inquiry is unnecessary. *PGE*, 317 Or at 611.

As did the Court of Appeals' majority below, we conclude that the legislative intent in enacting ORS 107.105(1)(f) is clear from the text of the statute. Indeed, we

---

[1] The wording of this sentence was changed by the 1997 legislature by substituting the word "may" for the word "shall." Although consideration of enhanced earning capacity as property no longer is mandatory, the remainder of the text remains unchanged. Therefore, our analysis of *how* to value a supporting spouse's contribution to the acquisition of enhanced earning capacity will continue to apply in every case in which the trial court deems it "just and proper" to consider a spouse's enhanced earning capacity as property. Moreover, as we note elsewhere, the way in which the parties made enhanced earning capacity a centerpiece of the *present* litigation essentially requires that it continue to be so on remand, even if the new statutory wording theoretically might apply.

find the Court of Appeals' majority's analysis and interpretation of the pertinent provisions of that statute to be both accurate and useful. We therefore repeat it here:

"[T]he statute regards the term 'contribution' broadly to include those of both financial and nonfinancial nature; indeed, ORS 107.105(1)(f) expressly declares that the contribution of a homemaker spouse is a 'contribution' to marital assets generally, and there is no mention of an intention to use the term more narrowly with respect to the particular asset of enhanced earning capacity. But the statute does not stop there. It goes on to say that not all contributions, however broadly defined, will trigger an enhanced earning capacity award. Only those that are 'material,' that are 'to the education and training' that produces the enhancement, that are 'substantial' and of 'prolonged' duration suffice. * * *

"The legislature did not define the precise contours of the terms 'substantial' or 'prolonged.' It is apparent that it intended the courts to exercise some measure of judgment in the light of the particular facts of individual cases. * * * The general thrust of the legislature's intentions, however, [is] fairly clear: Not just any contributions will suffice. To justify an award of enhanced earning capacity, there must be evidence of material contributions that are sufficiently sizeable and over a sufficiently long period of years as to justify treating the intangible asset of enhanced earning capacity as a form of marital property and awarding the contributing spouse a share of it as property, instead of compensating the spouse for those contributions through spousal support. That is the only interpretation of the statute that comports with *all* of its language, both in text and context."

*Denton*, 145 Or App at 392-93 (emphasis in original). While we endorse that general articulation of the prerequisites for an award to a spouse in consideration of enhanced earning capacity, we do not agree with the Court of Appeals' application of that analysis to the facts of the case before us.

■ In concluding that wife did not make contributions to the enhancement of husband's earning capacity that were "material," "substantial," or "prolonged," the court found persuasive the facts that (1) wife did not contribute *directly* to husband's educational expenses, in that those were covered

by student loans, grants, and scholarships; (2) wife did not alter her own goals to accommodate husband's education; (3) although wife moved to Iowa, that move did not force wife to alter her plans in any way; (4) wife did not need to work to enable husband to go to medical school; (5) wife worked outside the home for only a relatively small portion of the 15-year period between the time when husband started medical school and the time when he commenced the dissolution action; (6) wife did not need to take any particular action to facilitate husband's career; and (7) there was no evidence that wife's performance of all household tasks was required to enable husband to complete his education. *Denton*, 145 Or App at 401-03. We conclude that the Court of Appeals' reliance on those factors was misguided, insofar as it unduly emphasized what wife may or may not have "given up" during husband's pursuit of his medical degree while, at the same time, it minimized wife's contribution, both financial and otherwise, to husband's acquisition of that asset.

Under ORS 107.105(1)(f), those contributions that are "material" "to the education and training" that produce the enhancement, that are "substantial," and that are of "prolonged duration" will justify an award for enhanced earning capacity. During the period when husband was attempting to gain admission to medical school, and while husband was in medical school, wife worked full time, putting food on the family's table and a roof over their heads. Moreover, wife performed all domestic tasks during the entire period in which husband prepared himself for medical school, attended medical school, and performed his dermatology residency in Iowa. That freed husband to devote all his energy and concentration to his studies, which directly facilitated his acquisition of the medical degree as well as his dermatology specialty.

Wife also contributed directly to husband's educational expenses during medical school. The bulk of the financial aid that husband received during his attendance at OHSU was in the form of student loans that were later repaid with marital assets out of husband's salary after he graduated. However, those loans were lower than otherwise would have been the case, because wife supplied the income that kept the couple from having to borrow to pay living expenses while husband attended school. Additionally, although wife

may not have sacrificed career opportunities in quitting her job and moving from Corvallis to Portland so that husband could attend medical school, her continuing willingness to uproot, to relocate, and to find new employment constituted nonfinancial contributions to the enhancement.

In rejecting wife's arguments that her contributions were material and substantial, the Court of Appeals erroneously looked at each factor for which wife argued and held that that particular factor *alone* was insufficient. *Denton*, 145 Or App at 402-03. In any given case, the individual components of a spouse's contribution may not seem substantial when viewed separately, especially when the contribution is nonfinancial. As in this case, however, the contribution as a whole nevertheless may be quite substantial. The foregoing contributions, *when considered together*, as they must be, were both material and substantial.

In reaching its contrary conclusion, the Court of Appeals also emphasized wife's failure to demonstrate that husband could not have achieved his enhanced earning capacity "but for" her help. But we do not find in the statutory wording any requirement that the contribution be *essential* to the acquisition of the enhancement. The statute expressly provides that a material contribution may be nonfinancial in nature. In our view, the requirement of a material and substantial contribution to enhanced earning capacity is met whenever the contribution facilitates the acquisition of the enhancement in a major, as opposed to an incidental, way.

We turn now to the third prong of the analysis: Was the contribution "of prolonged duration"? ORS 107.105(1)(f) provides that the contribution *to the enhancement* must have been of prolonged duration. Therefore, in determining whether the duration of a spouse's material contribution was sufficiently prolonged to justify an award of enhanced earning capacity, a court must confine its examination to conduct that occurred during the period when one spouse acquired the enhancement. Wife's contributions in this case continued throughout the *entire* period when husband was attempting to gain admission to medical school, was attending medical school, and was completing the dermatology residency—that is to say, in terms of the statute, throughout the entire period

during which husband was engaged in "the education and training that resulted in the enhanced earning capacity." Those contributions were, by definition, of a "prolonged" duration.[2]

Based on the foregoing, we hold that wife has demonstrated that she "made a material contribution to the enhancement" of husband's earning capacity. She is, therefore, entitled to a portion of the "present value of, and income resulting from, [husband's] future enhanced earning capacity." To the extent that the Court of Appeals' decision holds otherwise, it is reversed.

■ In light of our decision that wife is entitled to some compensation for enhanced earning capacity, we examine the trial court's award to determine whether we simply should reinstate it. The trial court's "Judgment of Dissolution of Marriage" awards wife judgment against husband "as and for her contribution to the enhanced earning capacity acquired by [husband], to be paid in the form of annual installments in the amount of $15,000 per year for each calendar year that [husband] continues to work and [wife] survives." In a letter sent to the parties before the issuance of the judgment, the trial court described the purpose of that award as being "on account of husband's enhanced earnings, less wife's enhanced earning capacity, and after considering spousal support award, property division, including goodwill, etc." It is impossible to discern from those statements the factual basis for the trial court's award. The court did not indicate the present value of either husband's or wife's enhanced earning capacity. Neither did it disclose what portion of husband's enhanced earning capacity it allocated to wife. Perhaps even more importantly, the award as crafted by the trial court does not specify the total amount that husband will be required to pay. For those reasons, we do not simply reinstate the trial court's enhanced earning capacity award but,

---

[2] Under the circumstances, two of the factors considered by the Court of Appeals in reaching its conclusion that wife was not entitled to an enhanced earning capacity award—viz., that wife did not have to take any particular action to facilitate husband's career after husband joined the dermatology clinic and that she did not work outside the home after husband began to make money—do not detract from the cumulative weight of the other factors already discussed.

instead, reverse the judgment and remand the case to the trial court for further consideration.

■ Because we believe that the issue will arise on remand, we address one further question, *viz.*, husband's contribution to wife's enhanced earning capacity. Wife entered the marriage as a licensed practical nurse with a high-school education. By the time husband initiated dissolution proceedings, wife had earned a bachelor's degree in social work. As discussed above, the enhanced earning capacity statute, as it existed at the time of trial, provided that "the future enhanced earning capacity of either party *shall* be considered as property" when a party raised the issue. Thus, because husband raised the issue, the trial court must consider wife's enhanced earning capacity in calculating the award, if husband's contribution to the acquisition of that asset was material, substantial, and of prolonged duration.

The evidence at trial was undisputed that wife's education took eight years to complete and was financed entirely out of husband's income. Husband's financial contribution significantly facilitated wife's acquisition of the enhancement and, therefore, it was a material and substantial contribution. Moreover, husband's contribution was of prolonged duration, insofar as it continued throughout the period during which wife was engaged in the education and training necessary to acquire the asset. Based on the foregoing, we conclude that husband is entitled on remand to be credited with an equitable portion of wife's enhanced earning capacity.

In summary, we hold that the case must be remanded to the trial court for reconsideration in light of this decision. The goal continues to be the establishment of a property distribution that is just and proper. ORS 107.105(1)(f). Wife's portion of the present value of her own enhanced earning capacity should be considered along with her portion of the present value of husband's enhanced earning capacity to arrive at an award that, in light of all the other circumstances, will be just and proper.

The decision of the Court of Appeals is reversed in part and affirmed in part. The judgment of the circuit court is

reversed and the case is remanded to the circuit court for further proceedings.