Argued and submitted May 8, 1998, reversed and remanded in part; otherwise affirmed September 29, 1999

In the Matter of the Compensation of
Ferral C. Crowder, Claimant.

Ferral C. CROWDER,
*Petitioner,*

*v.*

ALUMAFLEX
and Employers Insurance of Wausau,
*Respondents.*

(94-12846; CA A95865)

986 P2d 1269

Donald M. Hooton argued the cause and filed the brief for petitioner.

Abigail V. Marshall argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Warden, Senior Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Claimant seeks review of a decision by the Workers' Compensation Board that denied his claim for increased permanent partial disability (PPD) benefits under the 1995 amendment to ORS 656.214(6). The Board denied the claim on the ground that claimant had not raised the issue of the PPD rate on reconsideration of the determination order in which the PPD rate had been applied. Claimant also challenges the Board's determination that he failed to prove that his compensable injury was the major contributing cause of his current psychological condition.[1]

The following facts are undisputed. Claimant was injured on February 1, 1990, while working as a patio cover/awning installer for employer. As a result of his compensable injury, claimant underwent low back surgery in March 1990 and April 1993. After a comprehensive pain evaluation, claimant was declared medically stationary in May 1994. Claimant's claim was closed by a determination order in August 1994 that awarded him 50 percent, or 160 degrees, of unscheduled PPD. The order awarded claimant $16,000 for the 160 degrees of PPD, based on the existing statutory rate for such awards of $100 per degree of disability. *See former* ORS 656.214(5) (1995). Claimant requested reconsideration but did not challenge the rate at which his PPD benefits had been calculated. An order on reconsideration was issued on May 12, 1995, affirming the 50 percent unscheduled PPD and adding an award of 26 percent scheduled PPD. Claimant previously had requested a hearing and, on May 15, 1995, he

---

[1] Claimant also assigns error to the Board's conclusion that he was not entitled to permanent total disability (PTD) benefits and its conclusion that his claim was not prematurely closed. Claimant concedes that we need not reach those assignments of error if we affirm the Board's conclusion that his compensable injury was not the major contributing cause of his current psychological condition, because those assignments are based on an assumption that the psychological condition is compensable.

Claimant also had assigned error to the Board's conclusion that it did not have jurisdiction over his claim for vocational assistance, but he withdrew that claim in light of *Sweisberger v. Manchester District, Inc.*, 151 Or App 508, 948 P2d 1261 (1997), in which we affirmed without opinion the Board's determination that it did not have jurisdiction over such claims. We note that that case is not a precedential decision of our court. *See Nero v. City of Tualatin*, 142 Or App 383, 386 n 2, 920 P2d 570 (1996).

filed a notice of his intention to raise the following additional issues at that hearing: "Appeal order on reconsideration for time loss, premature closure, additional permanent partial disability, permanent total disability, penalties and fees."

On June 7, 1995, an amendment to the Workers' Compensation Law took effect that changed the rate at which PPD benefits were to be calculated. Or Laws 1995, ch 332, §§ 17-18; ORS 656.214(6). Under the new law, which was made applicable to cases pending at the time that it took effect, Or Laws 1995, ch 332, § 66, the rate at which PPD benefits were to be calculated was changed from a flat $100 per degree to a grid system based on the total degrees of a worker's disability. On November 30, 1995, claimant designated the change in PPD rates as an additional issue for the scheduled hearing.

At the hearing, the administrative law judge (ALJ) determined that claimant's unscheduled disability had been miscalculated and awarded him four percent more of unscheduled disability. The ALJ also concluded that the new statutory rate applied to all of claimant's scheduled and unscheduled PPD benefits and ordered employer to recalculate those benefits under the new rates. The ALJ rejected claimant's contentions that his claim had been prematurely closed and that his current psychological condition was a consequence of his compensable injury.

Employer appealed to the Board, contending that the ALJ had erred in applying the new statutory rate for PPD, because claimant had not raised the rate issue on reconsideration. Claimant cross-appealed, raising the issues of the compensability of his psychological condition, the denial of PTD benefits, and premature claim closure.[2] The Board affirmed the ALJ's decisions as to claimant's psychological condition, PTD benefits and claim closure but concluded that claimant was not entitled to have his 50 percent unscheduled PPD paid at the new rate, because he had not raised that issue on reconsideration. ORS 656.283(7). However, because the 26 percent scheduled PPD and the extra

---

[2] Claimant also appealed the ALJ's conclusion that the Board had no jurisdiction over claimant's vocational assistance claim. *See* note 1.

four percent unscheduled PPD had been awarded at reconsideration, the Board concluded that claimant was entitled to have *those* awards paid at the new rate.

On review, claimant contends that ORS 656.283(7) applies only to issues that actually existed at the time of reconsideration. He points out that the new rates, which were intended to apply retroactively, did not become effective until *after* the reconsideration process had been completed. He argues that once those new rates became effective, he was entitled to be paid at the new rate and, accordingly, that he had raised the issue at the first possible moment, which was at his scheduled hearing.

Employer counters that, even though the new law had not been enacted at the time of reconsideration, there was sufficient information available to put claimant on notice that the law might change, so that claimant could have raised the rate issue on reconsideration. Employer argues that, because claimant *in theory* could have raised on reconsideration the issue of the rate at which his PPD was to be paid, even though the rate set at closure was proper under the existing law, claimant was precluded from raising it later. We are not persuaded. We conclude that an issue that, because of the state of the relevant statutes, did not exist at the time of reconsideration but which, because of a change in those statutes, became an issue before hearing is not barred by ORS 656.283(7) from being raised at hearing.

■ ORS 656.283(7) provides, in relevant part:

"Evidence on an issue regarding a notice of closure or determination order that was not submitted at the reconsideration required by ORS 656.268 is not admissible at hearing, and issues that were not raised by a party to the reconsideration may not be raised at hearing unless the issue arises out of the reconsideration order itself."

Although we look first to the text of a statute when we seek to discern the intent of the legislature, we analyze that text in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). "[T]he context of the statutory provision at issue * * * includes * * * *preexisting common law* and the statutory framework within which the law was enacted." *Denton and Denton*, 326 Or 236, 241, 951 P2d 693

(1998) (emphasis added; citations omitted). In this case, ORS 656.283(7) speaks of issues that must be raised or lost. That language invokes the common-law principles of claim preclusion and preservation and, consequently, it is those principles that inform our understanding of the legislature's intent.

Preclusion and preservation serve to "protect limited dispute-resolution resources from repeated expenditure upon the same overall dispute." *Drews v. EBI Companies*, 310 Or 134, 141, 795 P2d 531 (1990). The principle embodied in the rules on preclusion and preservation, including statutes such as ORS 656.283(7), is that, when the opportunity arises to raise an issue or claim, a party may be required to raise it or risk losing it. Accordingly, we conclude that, when the legislature referred in ORS 656.283(7) to issues that must be raised on reconsideration, it intended the reference to include only those issues that could have been raised at that point.

■ The question becomes, then, whether claimant had to raise the issue of the new PPD rates on reconsideration. We conclude that he did not. At the time that claimant requested reconsideration of the determination order, claimant's PPD award had been set at the proper statutory rate. Consequently, claimant had no ground on which to question or challenge the award at that time. We find untenable employer's argument that claimant should have taken the proposed legislation into account. Although a litigator might choose to anticipate future legislation that could create an issue where none now exists, there is nothing in ORS 656.283(7) to indicate that the legislature intended to require parties to anticipate such changes by requesting reconsideration to address them before they exist. Hence, we conclude that claimant was not required to raise the issue of the new rates at a time that the new rates did not exist.

Although we conclude that we need not look beyond the text of ORS 656.283(7), in context, to decide this case, we note that our reading of that text is supported by the legislative history of the statute. In a letter to the Senate Labor Committee, Virlena Crosley, Administrator of the Workers' Compensation Division, wrote that the 1995 amendment to the statute was designed to streamline the appeals process

and to reduce litigation costs. She wrote, "[t]o reduce litigation costs, it is important that issues be raised at the *lowest possible level* for resolution." Testimony, Senate Committee on Labor, SB 369, February 8, 1995, Ex A. The "lowest possible level for resolution" is the level at which the issue first exists. If it does not yet exist, then it cannot be resolved.[3] Because claimant was under no obligation to raise the PPD rate issue, the preclusive principle embodied in ORS 656.283(7) did not operate to prevent him from raising the issue when it finally did arise.[4]

Because we conclude that claimant was not precluded from raising the issue of the new PPD rates at hearing, and because the new rates apply retroactively to his claim, we reverse the Board's order as to the rate at which claimant's 50 percent unscheduled award should be calculated.

■ Claimant's second assignment of error is that the Board erred when it found that his compensable injury was not the major contributing cause of his current psychological condition. We will not disturb the Board's findings if there is substantial evidence in the record to support them. Substantial evidence exists to support a finding when the record, viewed as a whole, would permit a reasonable person to make the finding. ORS 183.482(8)(c).

Claimant contends that he suffers from depression caused by his compensable injury and that the depression renders him permanently and totally disabled. Claimant's

---

[4] The purpose of the reconsideration process is to correct errors and thereby make it unnecessary to devote resources to litigation to correct them. Here, reconsideration concluded before the legislature had amended the statute to increase the disability rates, so there was no error on that issue to be corrected on reconsideration. If employer were right that ORS 656.283(7) is intended to require parties to seek reconsideration of any issue that *might* arise as a result of future changes in the relevant rules or statutes in order to preserve the right to a hearing on the issue, then it would have the perverse effect of increasing the cost of claim processing. That is because parties would routinely ask for reconsideration of everything in order to avoid having ORS 656.283(7) bar them from litigating an issue that might later arise as a result of such changes.

[1] The parties do not dispute that, apart from the possible preclusive effect of ORS 656.283(7), claimant is entitled to have his PPD benefits paid at the increased rate because his case was still pending at the time that the 1995 changes to ORS 656.214(6) took effect. *See Volk v. America West Airlines*, 135 Or App 565, 569, 899 P2d 746 (1995), *rev den* 322 Or 645 (1996).

treating physician, Dr. Maletzky, diagnosed claimant as suffering from major depression and stated that he believed that the depression was "entirely secondary to his 1990 work related injury." Dr. Turco examined claimant on behalf of employer and determined that claimant's condition was "consistent with an individual who has physical disability, is depressed and requires psychiatric pharmacological intervention." Although Turco attributed some of claimant's depression to his compensable injury and subsequent unemployment, Turco also concluded that claimant had other possible sources of depression. He noted that a substantial factor in claimant's depression was the fact that claimant had suffered a large financial loss, or at least perceived that he had suffered such a loss, when he sold his farm. Claimant told Turco that he had been misinformed by his realtor and escrow agent and, as a result, faced a capital gains tax penalty of over $100,000. Turco stated that he could not apportion a specific causation percentage as to claimant's overall psychological condition between the depression caused by the injury and that attributable to claimant's tax concerns.

Relying on Turco's opinion, the Board found that claimant's compensable injury was not the major contributing cause of his depression. We conclude that the record supports that finding. In addition to Turco's report, claimant testified at the hearing that, although he was not upset about the sale of the farm itself, the perceived capital gains liability was a "big" factor in his depression. Claimant has not argued on appeal that that liability should somehow be seen as a direct consequence of his injury. Accordingly, we conclude that the Board did not err in finding that claimant's psychological condition was not compensable. Therefore, we need not reach claimant's other assignments of error.

Reversed on determination of PPD rate and remanded for determination of amount of PPD based on current rate; otherwise affirmed.