IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Tobacco Tax

GLOBAL HOOKAH DISTRIBUTORS, )
INC., )
            )
         Plaintiff, )    TC-MD 140466N
            )
     v. )
            )
DEPARTMENT OF REVENUE, )
State of Oregon, )
            )
         Defendant. )    **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered November 20, 2015. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appealed Defendant's notices of assessment, issued with its Conference Decision Letter on October 16, 2014, for 16 tax periods in 2008, 2009, 2010, 2011, and 2012. (Compl at 38–42.) The parties each filed a motion for summary judgment and a response, and waived oral argument. (Ptf's Ltr at 1, Sep 9, 2015.) This matter is now ready for decision.

## I. STATEMENT OF FACTS

The parties did not file stipulated facts. The facts presented to the court came from the declaration of Brennan Appel (Appel), filed by Plaintiff in support of its motion for summary judgment on July 14, 2015, and from the "Facts" section of Plaintiff's memorandum supporting its motion for summary judgment, which identified undisputed facts. (Ptf's Mem Supp Mot Summ J at 2.)

For the tax periods at issue, Appel was the president of Plaintiff. (Appel Decl at ¶ 2, July 4, 2015.) Appel declared that Plaintiff purchased tobacco products, "including shisha[,]"

and "paid Oregon excise tax * * * based upon the wholesale sales price of the tobacco products (purchased by Plaintiff)." (*Id.* at ¶¶ 3–4.) He declared that Plaintiff's invoices included "other invoiced charges such as shipping, warehousing, etc. charges," which he described as "Overhead Costs."[1] (*Id.* at ¶ 5.) Appel declared that "Overhead Costs included in Plaintiff's invoices from its wholesalers reflect arms-length charges over which [Plaintiff] cannot control[.]" (*Id.* at ¶ 6.)

Plaintiff presented the following facts as undisputed:

- "Plaintiff is a North Carolina business corporation registered as a foreign business corporation in the state of Oregon * * *." (Ptf's Mem Supp Mot Summ J at 2.)

- Plaintiff is an Oregon licensed distributor of other tobacco products, and is therefore a "distributor" within the meaning of ORS 323.500. (*Id.*)

- "Defendant's math calculations in its Auditor's Report are correct[,]" as are Plaintiff's tax calculations in its quarterly returns based on the cost of the other tobacco products and excluding the "Overhead Charges." (*Id.* at 3.)

- "The Overhead Costs are based upon arms-length activity between unrelated entities and reflect legitimate business conditions facing both Plaintiff and Plaintiff's sellers." (*Id.*)

## II. ANALYSIS

The parties agree that the issue presented in this case is what costs comprise the "wholesale sales price" applicable for tax imposed under Oregon's Tobacco Products Tax Act. (*See* Ptf's Mem Supp Mot Summ J at 4; Def's Mot Summ J at 1.) Plaintiff maintains that the wholesale sales price excludes "overhead costs," which Plaintiff identified as "federal tax and shipping; custom fees, duties, transportation, palletizing, warehousing, customer service, advertisement, documentation and 'other charges' found in Plaintiff's invoices from its wholesalers." (Ptf's Mem Supp Mot Summ J at 1–2.) Defendant argues that the wholesale sales price is the total invoice price paid by the distributor who purchases untaxed tobacco products, inclusive of all charges stated on the invoice. (*See* Def's Mot Summ J at 1–2.)

---

[1] The parties did not provide copies of invoices for any of the tax periods at issue.

The parties filed motions for summary judgment. The standard for summary judgment is provided by Tax Court Rule (TCR) 47 C,[2] which states, in pertinent part:

> "The court shall grant the motion if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

A.      *Statutory Framework*

"The Tobacco Products Tax Act—ORS 323.500 to 323.645—imposes a tax on activities within the borders of Oregon relating to [other tobacco products]." *Downer v. Dept. of Rev.*, 20 OTR 273, 276–77 (2011) (citing ORS 323.505). "Tobacco products" are defined as

> "cigars, cheroots, stogies, periques, granulated, plug cut, crimp cut, ready rubbed and other smoking tobacco, snuff, snuff flour, moist snuff, cavendish, plug and twist tobacco, fine-cut and other chewing tobaccos, shorts, refuse scraps, clippings, cuttings and sweepings of tobacco and other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or smoking in a pipe or otherwise, or both for chewing and smoking, but shall not include cigarettes as defined in ORS 323.010."[3]

ORS 323.500(14).[4] The tax is imposed "upon the distribution of all tobacco products in this state." ORS 323.505(1); *see also Downer*, 20 OTR at 276–77. The tax "is intended to be a direct tax on the consumer, for which payment upon distribution is required to achieve

---

[2] TCR 47 is made applicable through the preface to the Magistrate Division Rules, which states, in pertinent part, that "[i]f circumstances arise that are not covered by a Magistrate Division rule, rules of the Regular Division may be used as a guide to the extent relevant."

[3] Appel referred to "shisha" as one of its tobacco products. (Appel Decl at 1, ¶ 3.) Plaintiff's memorandum referred to "loose flavored tobacco" rather than "shisha." (*See* Ptf's Mem Supp Mot Summ J at 1.) Although ORS 323.500(14) does not specifically reference "shisha" in the defined list of "tobacco products," Plaintiff stated Oregon's other tobacco products tax "is imposed on loose flavored tobacco sold in Oregon because it is a 'tobacco product' under ORS 323.500(14)." (*Id.*) Thus, Plaintiff concedes that the tobacco products it purchased were subject to tax under the Oregon Tobacco Products Tax Act.

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2011. Other than a definition of "moist snuff" and the applicable tax rate imposed on "moist snuff," added in 2009, there are no material differences in the applicable statutes for the years at issue. *See* Or Laws 2009, ch 717, §§ 1–2.

convenience and facility in the collection and administration of the tax. The tax shall be imposed on a distributor at the time the distributor distributes tobacco products." ORS 323.505(1).

The terms "distribute" and "distributor" are both defined for purposes of the Tobacco Products Tax Act. "Distribute" is defined to include bringing tobacco products into the state, manufacturing tobacco products in the state, shipping tobacco products to retailers in the state, storing untaxed tobacco products in the state, selling untaxed tobacco products in the state, and possessing untaxed tobacco products in the state as a consumer. *See* ORS 323.500(6). "Distributor" is defined consistently with the definition of "distribute." *See* ORS 323.500(7).

The tobacco products tax is imposed at the rate of:

"(a) Sixty-five percent of the wholesale sales prices of cigars, but not to exceed 50 cents per cigar

"(b) One dollar and seventy-eight cents per ounce based on the net weight determined by the manufacturer, in the case of moist snuff, except that the minimum tax under this paragraph is $2.14 per retail container; or

"(c) Sixty-five percent of the wholesale sales price of all tobacco products that are not cigars or moist snuff."

ORS 323.505(2). The parties agree that the applicable tax here is the 65 percent tax upon the wholesale sales price of all tobacco products that are not cigars or moist snuff. (Ptf's Mem Supp Mot Summ J at 1; Def's Mot Summ J at 1.) The "wholesale sales price" is defined as "the price paid for untaxed tobacco products to or on behalf of a seller by a purchaser of the untaxed tobacco products." ORS 323.500(16).

The Oregon Department of Revenue has promulgated Oregon Administrative Rule (OAR) 150-323.505(2) on "determining wholesale sales price," which states:

"(1) In a transaction between parties who are not related or affiliated and who are presumed to have roughly equal bargaining power, the wholesale sales price is the price paid by the purchaser for the untaxed tobacco products.

"(2) If a seller and purchaser are related or affiliated or presumed not to have roughly equal bargaining power, the wholesale sales price is determined based upon comparable wholesale distributors' arm's-length wholesale

transactions of similar tobacco products sold to retailers that meet the requirements of section (1)."

B.    *The Court's Analysis*

"In interpreting a statute, the court's task is to discern the intent of the legislature." *PGE v. Bureau of Labor and Industries* (*PGE*), 317 Or 606, 610, 859 P2d 1143 (1993) (citing ORS 174.020).  Legislative intent is determined first from the text and context of the statute.  *Id.*, 317 Or at 610–611; *State v. Gaines* (*Gaines*), 346 Or 160, 171, 206 P3d 1042 (2009).  "In trying to ascertain the meaning of a statutory provision * * * the court considers rules of construction of the statutory text that bear directly on how to read the text.  Some of those rules are mandated by statute, including * * * the statutory enjoinder 'not to insert what has been omitted, or to omit what has been inserted.' " *PGE*, 317 Or at 611 (citing ORS 174.010).  "[W]ords of common usage typically should be given their plain, natural, and ordinary meaning." *Id.*  "[T]he context of the statutory provision at issue * * * includes other provisions of the same statute and other related statutes[.]" *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998).

"[A]fter examining text and context," the court may consider legislative history that "appears useful to the court's analysis." *Gaines,* 346 Or at 172; *see also* ORS 174.020(3) (stating that "[a] court shall give the weight to the legislative history that the court considers to be appropriate").  "If the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Gaines*, 346 Or at 172.

The statutory definition of "wholesale sales price" does not suggest what specific charges are included in that price.  *See* ORS 323.500(16).  The term "wholesale," used as an adjective, is

given the following definitions by *Webster's Third New International Dictionary*: "*1:* of, relating to, or engaged in the sale of goods or commodities in quantity for resale * * * *2:* performed on a large scale : handling or affecting large numbers or quantities * * *[.]*" *Webster's Third New Int'l Dictionary* 2611 (unabridged ed 2002). Thus, common definitions of wholesale do not suggest what components are included in a particular price; rather, the definitions focus on the purpose of the sale—"for resale"—and also on the quantity of goods involved in the sale—"large."[5]

The tax at issue in this case is imposed upon the "sales price" of the tobacco products. *See* ORS 323.505(2)(c). Elsewhere in the Tobacco Products Tax Act and in the Cigarette Tax Act, the legislature imposed a tax, in part, based on a particular unit (one cigar or one cigarette) and based on the weight of a product (an ounce of moist snuff). *See* ORS 323.030(1); ORS 323.505(2). Plaintiff argues that Oregon "imposes excise tax on cigars and cigarettes on a per-unit basis" even though "a wholesaler of cigars and cigarettes can incur expenses similar or identical to Overhead Costs." (Ptf's Mem Supp Mot Summ J at 6.) The court finds Plaintiff's reasoning unpersuasive because a tax measured per unit differs from a tax measured upon "sales price." The legislature could have measured the tax on other tobacco products using a unit or a weight, but instead chose to use the "sales price."

The statutory definition of wholesale sales price refers to a price paid to a "seller" by a "purchaser" of untaxed tobacco products. ORS 323.500(16). That statutory definition does not identify any particular point in the supply chain at which the tax is measured; it does not—as do statutes of other states—provide that the tax is calculated based upon the "manufacturer's" price. *Cf.*, *e.g.*, *Micjo, Inc. v. Dept. of Bus. & Prof'l Regulation* (*Micjo*), 78 So3d 124, 126 (Fla Dist Ct

---

[5] Those definitions are somewhat at odds with the fact that a "consumer" may be a "distributor" under the Tobacco Products Tax Act. *See* ORS 323.500(7)(e).

App 2012) (wholesale sales price is "established price for which a manufacturer sells a tobacco product to a distributor"); *U.S. Tobacco Sales & Marketing v. Dept. of Rev.*, 96 Wash App 932, 937, 982 P2d 652 (1999) (wholesale sales price defined as in *Micjo*); *McLane Minnesota*, *Inc. v. Comm'r of Revenue*, 773 NW2d 289, 293 (Minn 2009) (wholesale sales price is "the price stated on the price list in effect at the time of sale for which a manufacturer or person sells a tobacco product to a distributor").

The event that triggers the imposition of the tax is the sale of untaxed tobacco products to a purchaser in Oregon. That sale could be a manufacturer selling to a retail distributor, or it could be a direct sale of untaxed tobacco products to a consumer in Oregon. *See* ORS 323.500(7)(e) (defining "distributor" to include "a consumer in possession of untaxed tobacco products in this state").[6] The legislature explicitly stated that the tobacco tax is intended to be a "direct tax on the consumer." ORS 323.505(1). The tax is collected at the time of distribution as a matter of "convenience and facility in the collection and administration of the tax." *Id.* Defendant argues that the court should look to the consumer's perspective: "From the perspective of imposing a 'direct tax' on a consumer, therefore, both direct and indirect costs of manufacturing as well [as] packaging and shipping would be included in the sales price. To receive the tobacco product, all these costs would be paid by the consumer." (Def's Mot Summ J at 2.)

/ / /

---

[6] The Tobacco Products Tax Act was amended by House Bill (HB) 2368 (2003) to, among other things, define "distributor" to include a "consumer in possession of untaxed tobacco products in this state" and to add the statement to ORS 323.505(1) that "[t]he tax imposed by this section is intended to be a direct tax on the consumer, for which payment upon distribution is required to achieve convenience and facility in the collection and administration of the tax." Or Laws 2003, ch 804, §§ 31–32. During committee hearings on HB 2368, Matt McCauley (McCauley), Senior Assistant Attorney General and member of the Tobacco Compliance Task Force, told legislators that HB 2368 was a "compliance bill" aimed to strengthen civil and administrative enforcement. Testimony, Senate Committee on Revenue, HB 2368, May 28, 2003 (statement of McCauley). He stated that HB 2368 "clarifies the tax liability—who owes that liability is the consumer, we're making that much more clear." *Id.*

Under ORS 323.505(1), the tax is "imposed" at the time that untaxed tobacco products are "distributed" in Oregon. It is reasonable to conclude that the tax is measured at the time it is imposed. As Defendant correctly notes, the price paid by a purchaser of tobacco products at the time of distribution may vary depending on the point in the supply chain at which the tobacco products are "distributed" in Oregon. (*See* Def's Mot Summ J at 2.) Presumably, a consumer will pay more for the tobacco products than a manufacturer, yet either could be a "distributor" under Oregon law. *See* ORS 323.500(7). The court finds nothing in the statutes to indicate that a consumer would be entitled to rely, for example, on the manufacturer's price for tobacco; rather, the consumer would pay tax on the "sales price" that it paid to purchase the untaxed tobacco products.[7]

Plaintiff asks the court to conclude that the separately stated "Overhead Costs" listed on its invoices should be excluded from the wholesale sales price of the tobacco products purchased by Plaintiff. Little evidence was provided regarding the specific "Overhead Costs" at issue, but Appel declared that they "reflect arms-length charges over which [Plaintiff] cannot control[.]"

/ / /

/ / /

/ / /

/ / /

---

[7] A taxpayer raised this type of challenge in *McLane Minnesota, Inc. v. Comm'r of Rev*; the taxpayer, a Minnesota distributor, purchased tobacco from "Sales" companies, which in turn purchased tobacco from "Manufacturing" companies. 773 NW2d at 292. The taxpayer argued that its tax should be calculated based on the price paid by the "Sales" companies to the "Manufacturing" companies, rather than on the price it paid to the "Sales" companies. *Id.* The Minnesota Supreme Court rejected that argument and held that "the wholesale price on which the tobacco tax was based was the sales price for the tobacco products charged by the person, Sales, to the tax-liable Minnesota distributor, McLane." *Id.* at 296. The Court also rejected the taxpayer's challenge under the Commerce Clause, stating that taxpayer's "increased tax obligation is not the result of a tax that discriminates against out-of-state products or favors in-state products, but rather the result of Sales's business decisions to sell its tobacco products at a higher price than Manufacturing sold them. It is Sales's business model, and not the statutory structure, that causes [taxpayer's] higher tax obligation." *Id.* at 300.

(Appel Decl at ¶ 6.) In other words, the "Overhead Costs" were necessary costs incurred by Plaintiff to purchase tobacco products, and therefore part of the sales price.[8]

The court does not mean to suggest that *every* charge paid by a purchaser to a seller is necessarily part of the wholesale sales price of untaxed tobacco products. For example, in *Global Distributor & Wholesaler, Inc. v. Department of Revenue*, TC-MD 101182C, WL 878039 (Mar 13, 2012), the court concluded that certain fees paid pursuant to an exclusivity and promotional agreement between the purchaser and seller were not part of the wholesale sales price of the tobacco. The court reached that conclusion based on evidence including "a copy of a settlement agreement between the two companies" resolving a breach of contract claim and testimony from the purchaser's president describing the agreement. *Id.* at 12.

In this case, Plaintiff has failed to present evidence that any of the "Overhead Costs" were charges pursuant to an agreement for something other than the sale of tobacco products. The mere fact that charges are itemized on an invoice is insufficient for the court to conclude that the charges should be excluded from the wholesale sales price of the untaxed tobacco. The court finds no basis under the statutes to exclude necessary costs such as Plaintiff's "Overhead Costs" from the wholesale sales price of the tobacco, absent additional evidence to the contrary. The burden of proof to provide such evidence falls upon Plaintiff and was not met in this case. *See* ORS 305.427.

Plaintiff argues that it is "unreasonable" for it to pay tobacco tax on its "Overhead Costs" because such costs are variable—for example, the shipping price may vary depending upon the

---

[8] Similarly, in *U.S. Tobacco Sales & Marketing Co. v. Department of Revenue*, 96 Wash App 932, 941, 982 P2d 652 (1999), the Washington Court of Appeals construed the statute defining "wholesale sales price" to impose the tax "upon the value of a manufacturer's products, measured at the time the manufacturer sells the products. This price will reflect the quality, quantity, packaging, and trademark value of the products as provided by the manufacturer."

type of shipping. (*See* Ptf's Mem Supp Mot Summ J at 6.) The court makes two observations in response to that argument. First, as discussed at length above, the legislature has chosen to impose the tobacco products tax at the point of distribution. The sales price paid by a distributor at the point of distribution will depend, in part, on the distributor's business model. Other factors, such as the quality of the tobacco products, may also impact the sales price. The court does not find a tax on sales price that varies with the prices of tobacco products to be unreasonable.

Second, the applicable administrative rule addresses situations in which the price paid for tobacco products is unreliable, such as a sale between related parties or parties with unequal bargaining power. *See* OAR 150-323.505(2). In those instances, the wholesale sales price is determined based on arm's-length transactions of similar tobacco products. Appel declared that the "Overhead Costs" paid by Plaintiff were "arms-length charges." (Appel Decl at ¶ 6.) No allegation was made that Plaintiff lacked equal bargaining power with its seller.

Finally, the court addresses Plaintiff's reliance on the Florida case, *Micjo*. (Ptf's Mem Supp Mot Summ J at 5–7.) In *Micjo*, the District Court of Appeal of Florida construed the phrase "wholesale sales price," which was defined as "the established price for which a manufacturer sells a tobacco product to a distributor, exclusive of any diminution by volume or other discounts." 78 So3d at 126. In determining the plain meaning of wholesale sales price, the court focused on the meaning of "manufacturer," concluding that it "excludes companies that are solely domestic distributors." *Id.* at 127. The court also considered the meaning of "establish," concluding that a variable price that depended on where the domestic distributor shipped tobacco was not an "established" price. *Id.* Based on those key statutory terms, the court held that

///

"The various other distributor invoice costs for reimbursement of federal excise tax, shipping costs, and other charges, are not part of the tobacco. Although the domestic distributor adds those charges to the total invoice price, they are not part of the price that the domestic distributor paid the manufacturer for the tobacco, and thus, they are not part of the manufacturer's sales price for the tobacco."

*Id.* (Citation omitted.)

The conclusion in *Micjo* is not persuasive in this case because of important differences in the statutory definitions of "wholesale sales price." The Oregon statute makes no reference to the "manufacturer" or the "distributor"; rather, the applicable Oregon statute refers to the "seller" and the "purchaser." Unlike the Florida statute, the Oregon statute expresses no preference for a particular point in the supply chain. Notably, the Oregon statutory subsection imposing a tax on moist snuff specifically refers to "the net weight *determined by the manufacturer*[.]" ORS 323.505(2)(b) (emphasis added). Thus, the Oregon legislature knew how to refer to a "manufacturer's" price if it wished to do so. Also unlike the Florida statute, the Oregon statute makes no reference to an "established" price. The Oregon statutory scheme allows variability in the price depending on the point at which untaxed tobacco products are "distributed" in Oregon. For those reasons, the court declines to rely on the conclusion reached in *Micjo*.

### III. CONCLUSION

After careful consideration of the statutory text and context, the court concludes that, in this case, the "wholesale sales price" of untaxed tobacco products is the total sales price paid by Plaintiff as stated on the distributor's invoices. As a result, the court concludes that Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted. Now, therefore,

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

Dated this ___ day of December, 2015.

_____
ALLISON R. BOOMER
MAGISTRATE

***If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.***

***This document was filed and entered on December 11, 2015.***