IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Cigarette/Tobacco Tax

| | | |
|---|---|---|
| LIL PANTRY MARKET & DELI LLC and DALE HURST, Managing Member, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 170168N |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appealed Defendant's Notice of Civil Penalty Assessment, dated April 11, 2017. A trial was held by telephone on July 17, 2017. Wade Farquhar (Farquhar), Plaintiffs' employee, appeared on behalf of Plaintiffs. Fred Nichol (Nichol), tax auditor, appeared on behalf of Defendant. The following witnesses testified at trial: Leigh Graves (Graves), Plaintiffs' cashier; Jody Campos (Campos), Defendant's inspector; and Nichol. Neither party submitted exhibits.

Prior to beginning trial, Plaintiffs made an oral request to set over the trial because they had not received all of the documents requested from Defendant. Specifically, Plaintiffs stated that Defendant failed to provide a written copy of its policy concerning how long an inspector will wait for cigarette and tobacco invoices to be produced during an inspection. The court found that reason did not amount to an "exceptional circumstance" as required under Tax Court Rule-Magistrate Division 8 B(3) and denied Plaintiffs' request.

/ / /

/ / /

---

[1] This Final Decision incorporates without change the court's Decision, entered September 11, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

# I. STATEMENT OF FACTS

Plaintiff Lil Pantry Market & Deli LLC (the Market) is a business that sells cigarettes and other tobacco products (OTPs). Farquhar testified that the Market currently has nine retail locations in the state of Oregon, including a location in Central Point, Oregon.

Campos testified that she arrived at the Central Point location on March 8, 2017, at approximately 8:40 a.m. to conduct an inspection. Campos testified that she asked Graves to provide the invoices of the cigarettes and OTPs for the Market's inventory. Graves, who was filling in for the position at the time and was not familiar with the filing system, testified that she gave Campos a crate with physical invoices inside and Campos spent an estimated 30 to 45 minutes reviewing the invoices.

Campos testified that she then approached Graves and asked her for additional invoices, specifically invoices for Seneca products. Graves testified that she called the Market's central administrative office to have the remaining invoices sent to the Central Point location via email. Graves testified that she decided to call the central office because she believed it would be a quicker and more efficient way to retrieve the documents Campos asked to review. Graves also testified that another crate of documents was on site. Plaintiffs and Defendant stipulated that the central office sent an email on March 8, 2017, at 9:22 a.m. with seven invoices attached and another email at 9:49 a.m. with 17 invoices attached. Plaintiffs did not admit that the invoices that were emailed were not on site at the time of Campos' request.

Campos testified that she completed her inspection and left the Central Point location at approximately 10:09 a.m. Graves testified that, when Campos left, Campos told Graves that she had everything she needed and gave no indication that the Market would be fined.

After the inspection, the Market received a Notice of Civil Penalty Assessment (the

assessment). Defendant fined the Market $500 for failure to keep invoices related to cigarette transactions under ORS 323.220 and $500 for failure to keep invoices related to OTP transactions under ORS 323.540. (*See* Compl at 5.)

Plaintiffs appealed the assessment to the Oregon Tax Court on April 20, 2017. The parties agree that the requested invoices were provided during the inspection. However, the parties disagree as to whether the invoices that were emailed to the Central Point location qualify as having been "on the premises" or "at [the] registered place of business" at the time of the inspection. Campos testified that the penalties were assessed because the invoices were not on site at the time of her arrival. Farquhar testified that the Market has one centralized document storage location where all invoices and items are catalogued because it is "impossible" to retain all documentation at the Central Point location.

Plaintiffs ask the court to consider the emailed invoices "on the premises" at the time of the inspection and to waive the $1,000 penalty. Defendant asks the court to uphold the penalty.

## II. ANALYSIS

Broadly, the issue is whether Defendant properly imposed civil penalties on Plaintiffs. That depends on whether invoices emailed to a store location from another office during an inspection qualify as records kept "on the premises" and "at each registered place of business" under ORS 323.220 and ORS 323.540, respectively.[2]

Under ORS 305.427, "a preponderance of the evidence shall suffice to sustain the burden of proof" in proceedings before a magistrate of the tax court. The party seeking affirmative relief bears the burden of proof in the proceeding. ORS 305.427.

/ / /

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

A.      *Overview of Applicable Statutes*

ORS 323.220 provides that "[a]ny distributor and any person dealing in, transporting or storing cigarettes in [Oregon] shall keep, *on the premises*, receipts, invoices, and other pertinent records related to cigarette transactions, transportation or storage, in such form as the Department of Revenue may require."  (Emphasis added.)  ORS 323.540 provides that

> "[a]ny distributor, and any person dealing in, transporting or storing tobacco products, shall keep *at each registered place of business* complete and accurate records for that place of business, including itemized invoices, of tobacco products held, purchased, manufactured, brought in or caused to be brought in from without the state or shipped or transported to retail dealers in [Oregon], and of all sales of tobacco products made, except sales to consumers."

(Emphasis added.)

Under ORS 323.480(1)(a), Defendant "may" impose a civil penalty "on any person who violates any provision of ORS 323.005 to 323.482[,]" which generally concern cigarette taxes. The statute concerning OTP taxes is virtually identical: "A civil penalty may be imposed by the Department of Revenue on any person who violates any provision of ORS 323.500 to 323.645." ORS 323.630(1)(a).  With both cigarettes and OTP, the civil penalty "may not exceed $1,000 per violation."  ORS 323.480(1)(b); 323.630(1)(b).

Defendant has promulgated a rule concerning civil penalties for violation of cigarette tax statutes.  OAR 150-323-0290.  Under that rule, Defendant listed a schedule for the maximum penalty to be imposed per violation: first, a warning notice; second, $250; third, $500; and fourth and subsequent, $1000.[3]  OAR 150-323-0290(2).  Defendant identified the violations for which the civil penalty may be imposed, including the following relevant provision:

/ / /

/ / /

_____

[3] Presumably this is Plaintiffs' third violation because the penalty imposed was $500.

"ORS 323.220: Failure of distributors and persons dealing in, transporting or storing cigarettes in this state to:

"(A) Keep on premises records, receipts, invoices, and other pertinent papers; and

"(B) Refrain from destroying records if so ordered by the Department of Revenue[.]"

OAR 150-323-0290(3)(k).

Defendant promulgated a similar rule with the same penalty schedule for violation of certain OTP tax statutes. OAR 150-323-0420. The relevant violation that may result in a civil penalty is described as follows:

"ORS 323.540: Failure of distributors or any persons dealing in, transporting or storing tobacco products in this state to:

"(A) Keep on premises records, receipts, and invoices of product held, purchased, manufactured, brought in or caused to be brought in from outside this state or shipped or transported to retail dealers in this state, and of all sales of tobacco products made , except to consumers; and

"(B) Keep all books and records for the required five years after initial date of sale."

OAR 150-323-0420(3)(d).[4]

B.      *Analysis of Relevant Statutory Language*

Plaintiffs and Defendant stipulate that all the necessary invoices were provided during the inspection. The court's focus, then, is on the phrases "on the premises" and "at each registered place of business," and whether receiving an email with invoices attached during an inspection qualifies as "on the premises" and "at each registered place of business." ORS 323.220; ORS 323.540. The court employs principles of statutory interpretation to construe those phrases.

---

[4] Defendant's rule uses the phrase "on the premises" with respect to OTP, whereas the statute requires records to be kept "at each registered place of business." That suggests that Defendant views those phrases as having the same meaning.

"In interpreting a statute, the court's task is to discern the intent of the legislature." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), citing ORS 174.020. The court gives "primary weight to text and context." *Scott v. Dept. of Rev.*, 358 Or 795, 800, 370 P3d 844 (2016), citing *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). "In trying to ascertain the meaning of a statutory provision * * * the court considers rules of construction of the statutory text that bear directly on how to read the text. Some of those rules are mandated by statute, including * * * the statutory enjoinder 'not to insert what has been omitted, or to omit what has been inserted.' " *PGE*, 317 Or at 611, citing ORS 174.010. "[W]ords of common usage typically should be given their plain, natural, and ordinary meaning." *Id.* "[T]he context of the statutory provision at issue * * * includes other provisions of the same statute and other related statutes[.]" *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998).

"[A]fter examining text and context," the court may consider legislative history that "appears useful to the court's analysis." *Gaines*, 346 Or at 172; *see also* ORS 174.020(3) (stating that "[a] court shall give the weight to the legislative history that the court considers to be appropriate"). "If the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Gaines*, 346 Or at 172.

1.      *Analysis of the text and context of ORS 323.220*

The starting point of the analysis is the text and context of the statute. *PGE*, 317 Or at 610. The text of the statute is the best evidence of the legislature's intent. *Id.* The legislature did not define the phrase "on the premises." The court presumes that the legislature intended terms to have their plain, natural, and ordinary meaning. *Id.* at 611. "On" is commonly used as to indicate presence within. *Webster's Third New Int'l Dictionary* 1574 (unabridged ed 2002).

"Premises" commonly means "the place of business of an enterprise[.]" *Webster's* at 1789.

Putting those definitions together, the plain meaning of the phrase "on the premises" indicates that the records must be located within the taxpayer's place of business.

Plaintiffs argue that the statute does not require the invoices to be physically stored at the business location and that it complied with the statute by delivering the invoices to its Central Point location via email during the inspection. The problem with Plaintiffs' argument is another term in the statute, "keep." The statute directs a distributor to "keep" – defined as "to cause to *remain* in a given place" – "receipts, invoices, and other pertinent records" *within* the premises. *Webster's* at 1235; ORS 323.220. The court preliminarily concludes that Plaintiffs were required to maintain invoices for their cigarette inventory at their Central Point location and delivery of those invoices to the location via email is insufficient under the statute.

2.     *Analysis of the text and context of ORS 323.540*

Similar to ORS 323.220, the legislature did not define any of the terms in the phrase "at each registered place of business" in ORS 323.540. The court looks to the plain meaning of those terms. "At" is commonly used "to indicate presence in, on, or near[.]" *Webster's* at 136. "Each" commonly means being one of two or more distinct individuals having a similar relation. *Webster's* at 713. "Registered" means "to record formally and exactly[.]" *Webster's* at 1912. In this context, "registered" presumably refers to registration with the Oregon Secretary of State's office. *See* ORS 63.004 (filing requirements for Oregon limited liability companies). "Place" has the common meaning of a building or locality used for a special purpose. *Webster's* at 1727. Finally, "business" commonly means a commercial or industrial enterprise. *Webster's* at 302.

Plaintiffs maintain that they were not required to store invoices at their Central Point location and that invoices emailed to that location were sufficient to satisfy the requirements of

ORS 323.540. Absent additional evidence, the court disagrees with that interpretation. ORS 323.540 directs a distributor to keep complete and accurate records, including itemized invoices, *at each registered place of business*. Plaintiffs failed to present evidence that their Central Point location was not a registered place of business, distinct from their other stores and administrative office. Thus, the court preliminarily concludes that Plaintiffs were required to keep the invoices for their OTP inventory in the Central Point location; delivering the invoices to that location via email during the inspection is insufficient to meet the statutory requirement.

3.     *Legislative history of ORS 323.220 and 323.540*

The court next considers the legislative history of ORS 323.220 and ORS 323.540. The court may use legislative history to "confirm seemingly plain meaning and even to illuminate it[.]" *Gaines*, 346 Or at 172.

ORS 323.220 and ORS 323.540 were enacted as part of House Bill (HB) 2368 in 2003. The bill focused on clarifying and increasing compliance with cigarette and OTP tax laws. Audio, House Committee on Business, Labor, and Consumer Affairs, HB 2368, Apr 11, 2003, 42:51 (statement of Matt McCauley).[5] At the time, the State of Oregon experienced widespread untaxed sales to consumers, problems with internet sales, particularly to minors, and insufficient penalties. Audio, House Committee on Business, Labor, and Consumer Affairs, HB 2368, Apr 11, 2003, 44:25 (statement of McCauley). The primary problem with OTP was the lack of a licensure requirement for distributors. Audio, House Committee on Business, Labor, and Consumer Affairs, HB 2368, Apr 11, 2003, 45:30 (statement of McCauley).

HB 2368 was enacted in part to clarify tax liability. Audio, Senate Committee on Judiciary, HB 2368, June 11, 2003, 28:48. The legislature's goal was to facilitate enforcement

---

[5] Audio recordings of 2003 legislative session available at:
http://sos.oregon.gov/archives/Pages/records/legislative-minutes-2003.aspx

and ease administration of cigarette and OTP laws by creating record-keeping requirements and authorizing fines for noncompliance. Audio, House Revenue Committee, HB 2368, Apr 24, 2003, 32:45. Requiring businesses to retain invoices helped prove that taxes had been paid. Audio, Senate Committee on Judiciary, HB 2368, June 11, 2003, 29:16.

Although the legislature did not specifically discuss the phrases "on the premises" or "at each registered place of business" in ORS 323.220 and ORS 323.540, nothing in the history behind the enactment of HB 2368 conflicts with the court's prior reading of the statute. Requiring invoices to be on site in anticipation of an inspection tends to improve the ease of administration and enforcement; inspectors need not wait an extended period of time for records to be produced if they are on site. The court concludes that Plaintiffs were required to maintain their cigarette and OTP invoices at the Central Point location. Although Plaintiffs suggested that the invoices may have been on site in the other box, they provided no evidence to support that conclusion.

The court recognizes that the development of technology (*e.g.*, electronic invoices, cloud-based storage, etc.) raises questions of what qualifies as "on the premises" and "at each registered place of business," as it did in this case. Those questions must be addressed through the legislative process, or perhaps through an administrative rule-making process,[6] rather than by the court. Because Plaintiffs did not comply with ORS 323.220 and ORS 323.540, Defendant was permitted to impose civil penalties under ORS 323.480(1) and ORS 323.630(1).

/ / /

---

[6] Defendant was not *required* to impose penalties in this case. The applicable statutes state that Defendant "may" impose a civil penalty on one who violates any of the listed cigarette or tobacco statutes. ORS 323.480(1)(a); 323.630(1)(a). "Ordinarily, the use of the word 'may' in a statute is permissive; it denotes permission, authority, or liberty to do something." *Scott*, 358 at 801. Indeed, Defendant's rules include factors it will consider in deciding whether to impose the civil penalty, including a catch-all provision of "[a]ny other factors or information the department considers relevant to its determination." OAR 150-323-0290(4); OAR 150-323-0420(4).

## III. CONCLUSION

After careful consideration, the court finds that ORS 323.220 and ORS 323.540 required Plaintiffs to maintain invoices relating to their inventory of cigarettes and OTP within their Central Point store location. Emailing the invoices from a central administrative office did not meet the requirements of ORS 323.220 or ORS 323.540. Because Plaintiffs did not comply with ORS 323.220 and ORS 323.540, Defendant was permitted to impose civil penalties under ORS 323.480(1) and ORS 323.630(1). Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of September 2017.


_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within __60__ days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Allison R. Boomer and entered on September 29, 2017.*